IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

TERRY DAVIE, JR.                                                                    PETITIONER

Case No. 5:09CV00358-DPM-JTK

RAY HOBBS,[1] Director
Arkansas Department of Correction                                          RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge D.P. Marshall, Jr.   Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United Sates District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

---

[1]Substituted for former Director Larry Norris pursuant to Fed. R. Civ. P. 25(d).

2.    Why the evidence proffered at the hearing before the District Judge (if such a
hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The detail of any testimony desired to be introduced at the hearing before the
District Judge in the form of an offer of proof, and a copy, or the original, of any
documentary or other non-testimonial evidence desired to be introduced at the
hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

## DISPOSITION

Now before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2254

by Terry Davie, Jr., an inmate in the Arkansas Department of Correction. On October 12, 2005,

a jury convicted Petitioner Davie for the rape of his then thirteen-year-old daughter, A.D.[2]

(Respondent's Exhibit 2) He received thirteen years' imprisonment. On appeal, Petitioner

argued the Pulaski County Circuit Court erred in ruling that the State established a proper chain

of custody for smear slides that were taken from the victim. On February 7, 2007, the Arkansas

Court of Appeals affirmed the conviction. *See Davie v. State*, 2007 WL 404651(Ark. App. 2007).

(Respondent's Exhibit 3) Through counsel, Petitioner subsequently filed a post-conviction Rule

37 petition. In it, he argued defense counsel was constitutionally ineffective for not raising a

speedy trial issue. (Respondent's Exhibit 4) The Pulaski County Circuit Court denied the

---

[2]Petitioner's first trial, conducted on May 10, 2005, ended in a mistrial. *See Davie v. State*,
2008 WL 4890138, *1 n. 2 (Ark. 2008)

petition, *see* Respondent's Exhibit 5, and on November 13, 2008, the Arkansas Supreme Court affirmed the trial court's denial. (Respondent's Exhibit 6)  Petitioner filed his federal habeas petition on November 13, 2009.  (DE #1, Petition for Writ of Habeas Corpus) As his claim for relief, Petitioner argues the state presented false "DNA" evidence and argument at trial, in violation of his due process right to fundamental fairness and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution (DE #1, Petition for Writ of Habeas Corpus)

Respondent argues the claim is procedurally barred because Petitioner did not raise it either on direct appeal or in his Rule 37 proceedings.  (DE #6, Response at 2-3) Alternatively, Respondent claims Petitioner's claim lacks merit.  (DE #6, Response at 6-7) Petitioner's counsel did not file a reply to the response.

A federal habeas court may ordinarily consider only those federal constitutional claims fairly presented and raised in state court in accordance with state procedural rules. *Abdulllah v. Groose*, 75 F.3d 408, 411 (8th Cir.), *cert. denied*, 517 U.S. 1215 (1996).  In order to fairly present a claim, a petitioner must have referred the state court to a specific constitutional right and must have presented a statement of the facts that entitle him to relief.  *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  It is not sufficient for a petitioner merely to present the underlying facts to the state court, "or to make a general appeal to a constitutional guarantee as broad as due process ...." *Id.*; *see also Gilmore v. Armontrout*, 861 F.2d 1061, 1065 n. 8 (8th Cir. 1988), *cert. denied*, 490 U.S. 1114 (1989) (holding that a petitioner fairly presents a constitutional claim to state courts by raising the same significant facts and legal theories he advances in support of habeas

petition in federal court); *Waldos v. Huntley*, 69 F.3d 247 (8th Cir. 1995) (finding that, during a direct appeal, a petitioner must have explicitly referred the state courts to the United States Constitution or federal case law).

The argument in state court was based on the same facts Petitioner presents here, but the Court finds that Petitioner did not first raise in state court the claim he now advances in support of his federal habeas petition.

If a petitioner has not properly presented his claim to the state courts, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), requires him to demonstrate adequate cause for this default and actual prejudice resulting from the constitutional violation he asserts. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If he is unable to satisfy the cause and prejudice requirement, the court may still consider the claim if he establishes a constitutional violation has probably resulted in the conviction of one who is "actually innocent" and the failure to hear the claim would result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 795 (1986). *See also House v. Bell*, 547 U.S. 518, 522 (2006) (finding that the petitioner made "stringent showing" necessary for actual innocence exception to apply).

A "prosecutor's failure to disclose" to petitioner that the State used false evidence to convict him "constitutes a factor external to the defense and cause for petitioner's procedural default." *See Foster v. Lockhart*, 811 F. Supp. 1363, 1371-2 (E.D. Ark. 1992). Petitioner argues that the prosecutor's use of false testimony constituted cause for his procedural default. According to Petitioner, the two Arkansas State Crime Lab forensic biologists' testimony — that the results and conclusions of their analysis of Petitioner's DNA sample and the rape kit

evidence was with  "scientific certainty" and that the "probability of selecting an individual at

random having the same genetic markers as those identified in [the rectal swab taken from the

victim and the oral swabs taken from Petitioner] was less than one and one trillion ..."—was

"grossly misleading at best" and in fact "false."  (DE #1, Petition for Writ of Habeas Corpus

at 3-4)  Petitioner submits that the testing results were only "presumptive" in nature and done

by an "eyeball examination" under a microscope instead of by a "*confirmatory*" P-30 test.  *Id.* at

4 (emphasis in original).

Petitioner's argument for cause is unavailing. Scott Sherrill testified that he was a forensic

biologist at the State Crime Laboratory in Little Rock, and Petitioner's trial counsel did not

object to Mr. Sherrill testifying as an expert in serology.  (DE #6, Response, Exhibit 7 at 250)[3]

 Mr. Sherrill informed the jury that his job was to "examine evidence submitted by the law

enforcement agencies in the State for the presence of body fluids, primarily for blood and for

semen." *Id.*  In this instance, Mr. Sherrill testified that he received the rape kit from Stephen Ray

in the trace evidence section, *id.* at 251-2, and it contained a vaginal smear slide and swabs, oral

smear slide and swabs, rectal smear slide and swabs, and a blood sample from the victim.  *Id.* at

253.   The smear slides were stained and reviewed microscopically for the presence of

spermatozoa, or male reproductive cells.  *Id.*  Mr. Sherrill identified semen on the rectal smear

slide, and his results were peer-reviewed and confirmed by another analyst.  *Id.* at 254.

Thereafter, the swabs corresponding to the smear slides, along with the victim's blood sample,

were put into an envelope, labeled, and submitted to the DNA section for analysis.  *Id.*

---

[3]The Court's page reference is to the Bates-stamped number at the bottom of each page.

Thereafter, Melissa Myhand testified she worked as a forensic biologist at the Arkansas State Crime Lab, and Petitioner's defense counsel did not objet to her testifying as an expert. *Id.* at 262.  Myhand stated that, from the criminal aspect, DNA analysis is used to exclude or include a suspect or victim from a questioned stain.  *Id.* at 263.  She noted that Scott Sherrill submitted the rectal swabs and a blood sample from the victim and that a suspect sample from Petitioner was later submitted for comparison.  Myhand explained the process by which she extracted DNA from the samples to run a profile, *id.* at 265, and testified that the DNA profile obtained from the rectal swabs was consistent with the DNA extracted from Petitioner, stating:

> The probability of selecting an individual at random from the general population having the same genetic markers as those identified on Q-3 which was rectal swabs and E-1, oral swabs from Terry Davie, was less than one and one trillion.  The DNA identified on Q-3, rectal swabs, originated from E-1, Terry Davie with scientific certainty.

*Id.* at 264.  On cross-examination, Myhand confirmed that an acid phosphatase test is a "presumptive" test that indicates the presence of semen that would have to be followed by a "confirmatory test" to prove it.  *Id.* at 266-7.  Myhand testified that a P-30 test, like the review under a microscope, is a confirmatory test.  *Id.* at 267.  However, Myhand could not confirm the type of confirmatory test Scott Sherrill performed, but she noted that "it's our policy that ... if semen is not found" "on the swabs, they do not go to DNA" for testing.  *Id.* at 268, 271.

In the instant matter, Petitioner has failed to establish cause.  There is nothing "grossly misleading " or "false" about the testimony of Sherrill or Myhand.  Both testified as to their testing results, and Myhand testified that, based on procedure, the slides and swabs would not have been forwarded to her for DNA analysis unless semen was found. Myhand further

identified two confirmatory tests for semen—a P-30 test and microscopic slide review.[4]   Sherrill

testified that he reviewed the smear slide microscopically; therefore, Sherrill adequately

established the "confirmatory" semen test performed in this case.   Additionally, Myhand's

testimony as to the "scientific certainty" of the DNA match resulted from her DNA testing—

not from an "eyeball examination" as Petitioner asserts in the petition.   Thus, since no cause has

been shown, the Court need not reach the issue of prejudice.   *See Ashker v. Class*, 152 F.3d 863,

871 (8th Cir. 1998) (when a habeas petitioner "has not shown adequate cause to overcome the

---

[4]On cross-examination by defense counsel, Myhand testified as follows:

Q:   Okay.  Are you familiar with a, various tests that actually determine the presence of semen?
A.   Yes, sir.
Q:   Okay.  Are you familiar with the P-30 test?
A:   Yes, sir.
Q:   Okay.  Is that test, you know, presumed to be one that will accurately and probably with a hundred percent accuracy determine whether or not there's semen?
A:   If a P-30 test was performed and if it's positive, then the presence of semen is indicated.
Q:   Okay, now, an acid phosphatase test will give you a presumptive probability of semen, am I correct?
A:   Yes, sir.
Q:   It could be semen, it could be something else.
A:   That is correct.
Q:   But, you, if you run that test and it is positive, you have a presumption that that's semen.
A:   That it could be semen.  There would have to be a confirmatory test which follows to prove it.
Q:   Okay.  But, now, when you do the eyeball test, just looking at it under the microscope, you don't do any confirmatory test.
A:   That is one of the confirmatory tests to identify sperm cells on the smear slide.
Q:   A, one of the confirmatory tests is an acid phosphatase test, am I correct?
A:   No, that is the presumptive test, the acid phosphatase test.
Q:   That's a presumptive test.  But, a P-30 test is a confirmatory test, am I correct?
A:   Yes, sir, it is.

(DE #6, Response, Exhibit 7 at 266-267)

procedural bar in his case, ... we need not consider the issue of actual prejudice."). Further,

Petitioner has not asserted he is "actually innocent" of the charges as contemplated in *House v.*

*Bell*, 547 U.S. at 522. Thus, the Court finds that Petitioner's claim for relief is procedurally

barred.

IT IS THEREFORE RECOMMENDED that this petition be dismissed with prejudice.

DATED this 25th day of August, 2010.

_____
United States Magistrate Judge